CLARK ADX. ET AL. VS. SHELTON

Where suit is brought against an administrator, and a judgment obtained for a debt due by the intestate, it is the duty of the administrator, under the 98th section of the statute, (*Digest, chap.* 4,) to return such claim to the Probate Court for classification; and no other presentation or notice of his claim is required of the creditor; nor approval by the administrator.

In a chancery suit by a creditor, against an administrator, charging that assets had come to his hands, which he had not accounted for, the securities in the administration bond may be made parties, and a decree rendered against them on a recovery against the administrator.

The settlements made in the Probate Court by the administrator, are conclusive between the parties interested in the estate, so far as the court had jurisdiction; and

can only be impeached in a court of chancery upon allegations of fraud in the settlement. (*Dooley vs. Dooley,* 14 *Ark.* 122.)

Where fraud is alleged in the settlements of an administrator — as that the intestate sold property, and took notes therefor, payable to his wife, (afterwards his administratrix) to hinder and delay his creditors; that she received the money, but had not accounted for it as assets — the Probate Court has no jurisdiction to decide such question of fraud, and the creditors of the estate may well seek relief in a court of chancery.

Upon a creditor's bill, it is error for the court to decree the payment in full of the debt of the pursuing creditor, without giving opportunity to all the other creditors to bring in their claims and receive their proportion of the amount recovered—they paying their proportion of the expenses.

*Appeal from Hempstead Circuit Court in Chancery.*

Hon. JOHN QUILLIN, Circuit Judge.

WATKINS & GALLAGHER, for appellants. The sureties of Mrs. Clark, on her administration bond, were improper parties. The remedy against them on the bond, was purely of legal cognizance. *Outlaw vs. The Governor,* 5 *Ark.* 468; *Jones vs. The State,* 14 *Ark.* 171. The Probate Court is the forum where the alleged default of the administrator, for which they are to become liable on the bond, must be ascertained and established.

The decree is erroneous, because the demand of the complainant is to be paid in full; whereas, after the decree had professed to establish the fraudulent nature of the transaction, it would enure to the benefit of all the creditors.

It does not appear that the claim was ever probated. It was, in any event, the duty of the claimant to have taken his claim before the Probate Court for classification.

The matter in regard to the note of Hannah & Baldwin, was *res adjudicata.* It had been settled by the adjudication of the Circuit Court, on the appeal from the Probate Court; and the complainant is concluded by the adjudication of the Circuit Court upon the appeal, and which must stand forever, not being appealed from or reversed on error.

The Probate Court is a court of limited, but not of inferior jurisdiction, (*Borden vs. The State*, 6 *Eng.* 519,) and had the most ample and plenary power to investigate and determine the issue presented by the exceptions of the appellee to the settlements of the administratrix. The decision and all questions involved in the result, and which might or could have been decided, are forever conclusive upon the parties. See 2 *Smith's Leading Cases*, *p.* 424 ; *Duchess of Kingston's case*, and authorities cited.

PIKE, for the appellee. That the finding and judgment of the Circuit Court in the case before them on the exception, was no bar to this proceeding in chancery, is obvious, on two or three grounds.

*First.* It could not be conclusive, in any event, unless it was a finding and judgment on *the facts*, of want of consideration for the note, and of fraud or fraudulent intent as to creditors.

To make a former judgment a bar, it must *appear* that the trial was on the merits. If the real merits of the second action have not been decided in the first, the prior judgment is no bar. *Hitchin vs. Campbell*, 2 *W. Bla.* 827 ; 3 *Wils.* 304 ; *Sintzenich vs. Lucas*, 1 *Esp.* 43 ; *Estill vs. Taul*, 2 *Yerg.* 467.

It is conclusive only as to the facts directly and distinctly put in issue, and the finding of which must have been necessary to uphold the verdict or judgment. *Spooner vs. Davis*, 7 *Pick* 147; *Smith vs. Sherwood*, 4 *Conn.* 276 ; *Dennison vs. Hyde*, 6 *Conn.* 508 ; *Hopkins vs. Lee*, 6 *Wheat.* 109.

*Second.* The decision of the Circuit Court was made upon a summary application to the Court of Probate ; and such decisions are not considered so final and decisive as to furnish a bar to another and further discussion of the question. The question of fraud, and the annulling of fraudulent conveyances and assignments and the enforcement of secret trusts, are peculiarly within the jurisdiction of courts of equity, and courts of probate, from their peculiar frame and constitution, and the narrow and limited scope of their powers, are wholly incompetent to deal with them. *Brom-*

*ley vs. Holland,* 5 *Ves.* 610; 7 *id.* 3; *Greathead vs. Bromley,* 7 *T. R.* 450 ; *Angell vs. Hadden,* 2 *Meriv.* 163 ; 3 *Phill. on Ev.* (*Cowen & Hill's notes*) *p.* 825.

We submit that the Probate Court did not decide the essential questions in this case, because it had no jurisdiction or power to do so. *State vs. Reigart,* 1 *Gill* 1.

The note was received by Mrs. Clark, not after his death, in which case, if she had not accounted for it, it would have been the proper subject of an exception. But it was received by her in his lifetime ; and the question whether she was entitled to it was one peculiarly within the jurisdiction of a court of chancery.

Mr. Justice WALKER delivered the opinion of the Court.

This is a suit in chancery, brought by Shelton against Huldah Clark, as the administratrix of Benjamin Clark, deceased, and William Trimble, William Moss, and Thomas Davidson, her securities upon the administration bond.

The complainant alleges in his bill : That on the 10th of October, 1840, in the Hempstead Circuit Court, he obtained judgment against Benjamin Clark for two hundred dollars, with interest from the 30th of April, 1830, and costs : That to hinder and delay the collection of this judgment, Clark sold a plantation to Joel W. Hannah and Samuel Baldwin, after the judgment was obtained and whilst it was in force, for $1800, and took notes or bonds for the purchase money, payable to his wife, Huldah, without any consideration from her : That afterwards, Clark died, leaving the said Huldah his widow, who, on the 29th of February, 1845, took letters of administration, and gave bond with her co-defendants as securities : That she had not charged herself, as administratrix, with the plantation, or the money received for the same : That the personal estate was appraised to $985 75 and, except the slaves, was, by a fraudulent arrangement, bought in for her use, for the sum of $37 65 : That Clark owned two slaves worth $400 and $200, of whom she had possession, and had con-

verted their labor to her own use, without having charged herself with hire; there was, also, $32 worth of property appraised, which she retained: that the claims allowed against the estate, amounted to $877, and that Shelton brought suit on the judgment obtained in 1840, against Clark; and, at the November Term, 1846, of the Hempstead Circuit Court, obtained judgment against the said Huldah, as administratrix: That no just and legal settlement had been made.

The prayer of the bill was for an account, and that the administratrix should be charged with the $1800, the price of the plantation; the appraised value of the slaves and their hire, and the appraised value of the personal property; that the estate should be settled, and all the claims against it paid.

Moss and Davidson demurred to the bill, which was overruled, and Huldah Clark answered.

She admitted the sale of the plantation, and that a bond for $1500 was taken directly to her; says that $100 of that amount was paid to Clark, leaving $1400, which she admits that she collected; claimed it as her own; denied that the bond was made payable to her to hinder, delay, or defraud creditors, but because Clark had, before then, acquired possession of property through her of greater value than $1500 and used it; and that for this consideration, and because of her dower interest in the land, the bond was executed to her.

She states that she made a settlement with the Probate Court, which she relies upon as conclusive against the complainant: says that he excepted to the account, amongst others, for the reason that she had not charged herself with the item of $1400, the money so received as part of the price for the land, as well as for the reason that hire had not been charged, and for improper credits claimed. And that upon appeal to the Circuit Court, a trial, *de novo*, was there had, and it was held that she was not properly chargeable with the $1400, and that upon a re-statement of the account for settlement, in conformity with the decision of the Circuit Court, a final settlement was made: That the assets have been distributed.

She admits that she retained the slaves in her own hands, because she disliked to sell them, and preferred charging herself with the appraised value. She admits that her son bought in the property at less than its value for her: says the sale was open, after notice, and there were many persons present.

The case was heard upon the bill, answers, and exhibits, and the records pleaded in the answer to the bill.

The court below decided that the $1400 were properly assets of the estate, and ascertained the amount of the complainant's claim to be $531 26, and decreed in favor of the complainant for the same, to be paid by the administratrix, if to be had by recourse against her, if not, then against the securities.

It is first objected by the appellants, that the complainant never submitted his claim to the Probate Court for classification and allowance; and, therefore, he has no right to an equitable account and distribution of assets.

If this claim had been probated, under the 88th section, Digest, ch. 4, in which it is made the duty of the claimant to present his claim to the administrator for allowance, there would be much force in the objection; but the claim of the claimant required no presentation to the administratrix for her approval. It is a claim provided for under the 87th section, which provides, that all actions commenced against the executor or administrator, after the death of the testator or intestate, shall be considered as claims legally exhibited against such estate from the time the action is commenced, and shall be classed accordingly. And the 98th section makes it the duty of the administrator to class such claims with others, and make a return thereof to the Probate Court. The 99th section, which requires of the claimant to file his claim in the office of the Probate Court for classification, evidently has reference to claims presented for allowance under the 88th section; because, the 99th section makes direct reference to claims that have been "approved and allowed" by the administrator, and requires the same, together with a copy of the notice served upon the administrator, to be filed, &c. This notice and appro-

val, and an allowance by the administrator, are all provided for in the 98*th* *section*, and belongs to the class of claims therein mentioned : but with regard to claims founded on suits commenced against the administrator in the Circuit Court, neither presentation, notice nor approval are required, but the suit is itself notice and presentation, and the judgment of the court an allowance of the claim.

We think, therefore, that this objection cannot prevail.

It is next objected that the securities are improper parties to this suit ; that they can only be reached by a suit at law upon their bond. We find no authority to sustain the grounds assumed by counsel ; nor does there appear to be any good reason why they should not be sued jointly with the administrator for a breach of trust. She entered into bond to perform that trust. They became securities that she would do so, or that they would pay damages, &c. They can make as good a defence in chancery as at law, and after the court has decided upon the extent of the liability of the principal, there would seem to be no good reason for requiring a suit at law upon the bond against the securities, when by making them parties to the suit in chancery, unnecessary delay and expense would be avoided. All of the objections urged by the counsel in this case, were presented in the case of *Ennis vs. Smith*, 14 *Howard S. C. R.*, 418, and were overruled by the court.

Conceding the claim to be valid and properly presented for payment, the next question is, can the complainant re-investigate the accounts of the administratrix, approved upon final settlement with the Probate Court.

This can only be done in a court of chancery upon the allegation of fraud in the settlement of such account supported by the affidavit of the party making such allegation. *Digest, sec.* 111, *chap.*4 ; *Dooley vs. Dooley*, 14 *Ark.* 122.

So long as the settlement stands, it is conclusive upon the parties, and definitely fixes the extent of the liability of the administratrix for assets ; so far, at least, as the items of charge or

credit were proper subjects for investigation. But it is insisted that the settlement in this instance is not binding upon the complainant, because the item, if charged against the administratrix, involved a question of fraud between the intestate and herself, which had first to be determined before the item could be charged as assets; and that the Probate Court had no jurisdiction over the same. But that in order to determine the question of fraud, resort should be had to a court of chancery, where all the parties may be brought forward, and a full investigation had.

There is no provision made by the statute for trying an issue of this kind before the Probate Court, as between the administratrix and creditors, where the administratrix asserts title in herself to estate supposed to be assets. The contest upon exceptions to an account for final settlement, is narrowed down to an account of assets with which the administratrix stood charged, or which came to her hands as such, or which she should have received and accounted for, but not to property or estate claimed and held adversely. That never becomes assets until so adjudged. The administrator may be held accountable for neglect of duty in not reclaiming and charging himself with property or effects belonging to the estate, but which is held by adverse title; but this must be done in a court of competent jurisdiction for that purpose.

This question came up in *Forniquett vs. Perkins*, 7 *How. S. C. Rep.* 160, and it was there held that the Probate Court had no jurisdiction, whatever, in a case like the present, and that no decision made by that court would bar a re-investigation of the same question in a court of chancery.

In the case of *Forniquett vs. Perkins*, it seems that Perkins made a settlement with *Forniquett and wife*, and took their receipt in full discharge and payment of the whole of the estate in his hands. Subsequently, Forniquett and wife filed their petition in the Probate Court for the purpose of setting aside the settlement, and charging Perkins with spoliations to a large amount, which had been concealed from petitioners, and not taken into

the account for settlement. Perkins, the administrator, in his answer, denied the fraud, and insisted upon his receipt as a discharge. By consent of both parties, this issue was taken to the district court to be tried, and the decision made in favor of Perkins.

After this, *Forniquett and wife* filed their bill in chancery in the Circuit Court of the United States, setting up therein the same cause of complaint as that set forth in their petition to the Probate Court, and which had been decided against them, referred to the former decision, and protested that it was not binding upon them, because the Probate Court had no jurisdiction of the subject matter at issue.

The defendant relied upon the former adjudication of the case in bar of the action. Judge DANIELS, who delivered the opinion of the court, cited authorities and held that the Probate Court had no jurisdiction of the matter at issue, but that, inasmuch as by agreement of parties, the case had been removed to the district court, a court of competent jurisdiction, he would hold its decision conclusive.

Such was, also, the decision of the Supreme Court of Pennsylvania in *Trett's Appeal*, 4 *Watts & Serg.* 433.

Independent of these authorities, which would seem to be decisive of the question, is that of our own court: *Moss vs. Sandefur*, 15 *Ark.* 381, in which it was held that the Probate Court had no jurisdiction to try and determine contested rights to property between the administrator and third persons.

Adhering to the principle settled in *Moss vs. Sandefur*, we hold that the Probate Court could rightfully exercise no jurisdiction in regard to the alleged fraud between the administratrix and her intestate; and, consequently, that the settlement made with the Probate Court did not preclude the right to sue in chancery for the purpose of setting aside the fraudulent transfer of estate to the administratrix, and to subject it to the payment of the creditors of the estate. And although we are far from being satisfied that any decision ever was in fact made upon the question

of fraud by the Probate Court, or by the Circuit Court upon appeal, yet, we deem it a matter of no importance to investigate it; because, as we have held that the Probate Court had no jurisdiction, it follows that no decision made by it would be valid.

This may be considered a creditor's bill brought by the complainant, one of the creditors of the estate of Ben. Clark, for himself and for all of the creditors. The practice, on account of convenience, may be considered as well settled. *Daniel Chancery Pleadings & Practice, page* 284. All of the creditors are specially referred to in the bill. It is alleged that the payment of the note was made payable to the administratrix, to defraud all of the creditors: an exhibit of their respective claims allowed, with date and amount, is made. They are all just claims, now due and unpaid, as well as complainant's; that the administratrix refuses to pay them, with a prayer that the court of chancery may take jurisdiction of the estate, charge the administratrix with the sums she has fraudulently withheld, for the benefit of complainant and the other creditors, and that such creditors be jointly charged with the costs and expenses of this suit; that payment be made by the administratrix to them, and each of them, and in the event that she fails to do so, that the securities be decreed to pay, &c.

Upon the death of the intestate, his estate became at once charged with the payment of all of his debts, to be paid under our statute according to class, *pro rata.* We think the bill sufficiently comprehensive to protect the rights of all the creditors; and without going into a minute examination of the facts, we may say that the answer, as it sets up a right to the money, which is admitted to have been received, as charged in the bill, is altogether unsustained by any proof that the notes were made payable to her upon a meritorious consideration. If, as she alleges, it was in consideration of property received by Clark, by virtue of his marriage, it devolved upon her to show the facts — which she has failed to do — which leaves the allegation, in effect, admitted.

We think, therefore, that the court below properly decreed that the $1400 were assets in the hands of the administratrix, and should be accounted for as such; but we can see no sufficient reason why the claims of the other creditors should have been overlooked, or why a just and fair settlement of the estate (which was properly before the court for settlement) was not made. It is true, that so far as the settlement with the Probate Court was made, touching matters within its jurisdiction, it was, unless set aside for fraud, by a direct proceeding in chancery, conclusive; but there was, nevertheless, no reason why, as between the creditors of the estate, the whole of the assets, as well those found to be due upon the settlement, as the $1400, should not be considered as one fund, out of which to pay all the claims. To charge the several claimants with the amounts received upon their claims, upon distribution of the assets under the settlement, and to divide the assets amongst the creditors according to the statute, giving to the complainant's claim a place in the classification, as of the date of the commencement of the suit, upon which judgment was rendered. By doing this, all of the claimants would have been placed upon equal footing, and should, in like proportion to the benefits received, have borne the expenses of the suit.

But it seems that the court below made no provision whatever for the other creditors. This, at least, in the first instance, should have been done, unless the other creditors had formally declined to incur the expenses, and take the benefits of the decree. If, upon day being given for that purpose, the other creditors should decline or neglect to come in as parties to take the benefits of the decree, then no doubt the relief granted in this case would have been proper; but such is not the nature of the decree. It must be set aside, and the cause remanded to the court below with instructions to enter up a decree in conformity with the opinion herein delivered, taking an account as well of the amount of the assets reported upon final settlement, as the sum of $1400, the sum heretofore unaccounted for, and after charging the other

creditors with sums received upon the distribution of assets, to proceed, according to the statute, to ascertain the amount due to each creditor, and decree accordingly, upon condition that he comes in, by a day given for that purpose, to take the benefits of the decree ; and, in the event that the other creditors, or any of them, fail to do so, that then the sum or sums so decreed, be applied, upon like equitable principles, to the benefit of those who come in to share the expenses and advantages of the decree. That costs be decreed in the court below against the defendants, and in entering the decree, an account shall be taken of the expenses of the complainant, including his attorney's fees in prosecuting this suit, and each of the creditors charged with his due proportion thereof, according to the amount of his claim against the estate.