BROGAN *v.* BROGAN.

Opinion delivered January 30, 1897.

PROBATE COURTS—JURISDICTION.—The probate court has jurisdiction to determine whether or not the creditors of a decedent's estate have by laches lost the power to subject the real estate to the payment of their debts, where the question is incidentally involved in a proceeding to compel the administrator to make a final settlement of the estate. (BATTLE and HUGHES, JJ., dissenting.)

ADMINISTRATION—CREDITOR'S RIGHT TO SUBJECT LAND.—Creditors and administrators must apply for the subjection of lands to the payment of debts within a reasonable time, and if, without sufficient cause, they fail to do so, their rights in that respect will be barred.

SAME—LACHES.—Delay for more than seven years after the grant of letters of administration before attempting to subject land of an intestate to the payment of his debts, without other excuse than that the values of real estate in the city where the land was situated were declining during that time, is such laches as bars the relief sought.

SAME—ASSENT OF ADMINISTRATOR TO DELAY.—The fact that the administrator of an estate was one of its heirs and that he consented to delay the sale of its land will not excuse the creditors for laches in taking steps to have the land sold, as to heirs who did no assent thereto, but the coparcenary interest of the administrator may be subjected to the debts of the estate.

SAME—DELAY IN SUBJECTING LAND.—Where land of an intestate was in litigation, it is not an unreasonable delay for the administrator to wait three years after final judgment in the trial court, until the three years allowed for appealing have expired, before proceeding to subject the land to the payment of his intestate's debts.

Appeal from Sebastian Circuit Court, Fort Smith District.

EDGAR E. BRYANT, Judge.

### STATEMENT BY THE COURT.

Joseph Brogan, a resident of Sebastian county, died in 1873, leaving an estate of real and personal property. His brother, E. C. Brogan, who was also an heir, was appointed administrator of his estate in November, 1873. The assets of the estate have now been exhausted, with the exception of a lot in the city of Fort Smith, and a farm in the county of Sebastian, but a portion of the debts of the estate are still unpaid. This proceeding was brought October 10, 1894, in the probate court, by two of the heirs of Joseph Brogan, deceased. They alleged that, although the administrator still held possession of the unsold real estate, yet that the right to subject such real estate to pay debts had been barred by laches. They asked that the court compel the administrator to make and file a final settlement, to the end that the administration be ended, thus allowing the heirs to take possession of the real estate. The probate court

found that the right to subject the town lot had been barred by laches, but that the right to subject the farm tract still existed, and for this reason refused to order the administrator to make a final settlement. On appeal to the circuit court, it found that the rights of the creditors were not barred as to either tract, and for this reason also refused to order the administrator to make final settlement.

*Thomas Boles* for appellants.

Creditors must enforce their lien within a reasonable time, and they are responsible for unnecessary delay. Sand. & H. Dig., secs. 200 to 204; 37 Ark. 155; 56 *id.* 633. The delay is clearly unreasonable, and the administrator and creditors are chargeable with and guilty of gross laches. 56 Ark. 633; Rover, Jud. Sales, secs. 250 to 260; Mansf. Dig., secs. 188, 189 to 192; Woerner, Adm. sec. 469; 47 Ark. 471. The fact that the title is in litigation is no bar to ordering real estate sold to pay debts against the estate. 38 Ark. 388; Acts, February 15, 1877. The bar is complete. Cases *supra*, 46 Ark. 373; 2 Woerner, Adm. secs. 465; 7 Wheaton, 119; 23 Ill. 484; 57 *id.* 583; 130 U. S. 320; 10 Fed. Rep. 59.

*Jos. M. Hill* and *Preston C. West* for creditors, and *Grace & Forrester* for administrator.

The finding of the court below that the delay is *not unreasonable* is conclusive. 56 Ark. p. 638; 40 *id.* 298; 56 *id.* 621; 50 *id.* 267; 53 *id.* 161; 11 N. J. L. p. 57. Whether the delay was reasonable or not must be settled by the court in each particular case, in its sound discretion. 56 Ark. 639; 37 *id.* 155; 38 *id.* 388; 46 *id.* 373; 47 *id.* 471; *ib.* 277; 54 *id.* 174; 60 Ill. 282. It is not the duty of an administrator to sacrifice property at a sale, when it is in litigation or incumbered. 11 N. J. L. 44; 44 Ill. 202; 51 Ill. 308; 60 Ill. 277; 54 Ark. 174; 56 Iowa, 117.

RIDDICK, J. (after stating the facts.) This is a proceeding by certain heirs of an intestate to compel the administrator of his estate to make a final settlement and close the administration. Of the property of the estate there remains undisposed of only a town lot and a farm. As a reason for requiring a final settlement, it was alleged in the petition filed by the heirs that the rights of the administrator and creditors were barred as to this remaining real estate by laches and lapse of time. This allegation was denied by the administrator and creditors, who were allowed to become parties to the proceeding, and upon the determination of the issue thus made turns the decision of the question as to whether the administrator should be ordered to make a final settlement; for, if the administrator and creditors have lost the right to subject this real estate to the payment of the debts of the estate, there is no further need for an administrator, and a final settlement should be ordered, and the administration closed.

Probate courts have no jurisdiction to determine questions of title to real estate arising under claims of title adverse to the estate. But the probate court has the power to determine when an administrator shall make a final settlement, and it is the duty of the probate court to require an administrator to make final settlement when the assets of the estate have been fully administered. And when, in order to determine whether the administration should be closed, it becomes necessary incidentally to inquire and decide whether the creditors have lost the power to subject the real estate of the intestate to the payment of their debts, the probate court has the power to determine that question also. *Tryon* v. *Farnsworth*, 30 Wis. 577; *McWillie* v. *Van Vacter*, 35 Miss. 428, 72 Am. Dec. 127; Works, Courts and Jurisdiction, p. 441; Brown, Jurisdiction, sec. 146.

We will therefore proceed to consider whether the administrator and creditors have been guilty of such laches as to bar the right to subject this real estate to the satisfaction of debts probated against the estate; for, if so, a final settlement should be ordered. It is well settled that creditors and administrators must apply for the subjection of land to the payment of debts within a reasonable time, and if, without sufficient cause, they fail to do so, their rights in that respect will be barred. *Roth* v. *Holland*, 56 Ark. 633; *Killough* v. *Hinton*, 54 *ib.* 65; *Mays* v. *Rogers*, 37 *ib.* 155.

As to creditor's right to subject decedent's land.

Twenty one years had expired after the grant of letters of administration before the commencement of this proceeding in the probate court. This would defeat the lien of the creditors unless there be something to excuse the delay, for it has been decided by this court that a delay for "more than seven years is not reasonable, and therefore defeats the right of a creditor or an administrator in his behalf, unless there is something to excuse the delay." *Roth* v. *Holland*, 56 Ark. 633.

When such right lost by laches.

The excuse given here is that the title to the land was involved in litigation. As the farm and town lot are entirely separate, so that the price of one was in no way affected by the litigation concerning the other, we will consider the evidence in regard to the two separately. The town lot was sold under an order of the probate court in 1876, but, afterwards, in October of the same year, the court set the sale aside. The administrator did not again offer the lot for sale. On the 5th day of August, 1882, Ann Quinn brought suit against the administrator to recover this lot. This action terminated on the 6th day of February, 1885, by a judgment in favor of the estate. The administrator says he then waited three years for the time allowed for an appeal to expire. The record does not show

whether this suit brought by Ann Quinn was an action
at law or in equity, nor what issues were in-
volved. The large majority of cases determined in the
circuit courts are never appealed. Many cases turn on
questions of fact, which may be so fully established upon
trial that the probability of affecting the result by an
appeal is to remote to be considered. So we cannot say
that an administrator should in every case wait three
years after a judgment in favor of the estate for land
before proceeding to subject it to the payment of debts
when the opposing claimants show no disposition to per-
fect an appeal. But, if we add the three years allowed
for an appeal, there will still be less than six years that
the price of the lot could have been affected by this liti-
gation; and of the twenty one years elapsed since the
granting of letters there remain over fifteen years in
which no such impediment existed.

Effect of the
administra-
tor's assent to
delay.

As a further excuse for not selling, the administra-
tor says, in substance, that, prior to the commencement
of this suit by Ann Quinn, Fort Smith was only a small
town, and real property was very low, and that he did
not offer the lot for sale, because he knew he could not
get anything like its value; that, after the law suit was
ended and the time for appeal had expired, the "boom"
in Fort Smith real estate was over, values were begin-
ning to decline, and he did not wish to sell on a falling
market. But if the fact that the values of real estate
in a city were declining justified an administrator in
withholding from sale a lot therein, why would not the
fact that such values were advancing furnish a reason
equally as cogent for withholding it from sale? And as
real estate values are often either declining or advanc-
ing, it would, under such a rule, be difficult to get an
estate wound up, and the heirs might be kept out
of possession indefinitely. While an administrator
should endeavor to sell the land of his intestate

at a fair price, he has no rignt to withhold it from sale for long periods, waiting for an advance in prices. No one can tell when a general advance or decline in prices of real estate will start; and administrators are not required to speculate upon land values in that way. The hazard of such an attempt is shown in this case. The evidence shows that during the "boom," or time when real estate values were high, this lot was worth $300 per front foot, and that in February, 1888, when the time for appeal had elapsed, and there existed no impediment to a sale, it was still worth $250 per front foot, but six years later was only worth $100 a front foot. In the mean time, interest upon the debts had been accumulating at ten per cent. per annum. The value of the lot is less than one half, while sixty per cent. has been added to the debts by the accumulation of interest. The fact that the administrator was one of the heirs, and that three of the creditors consented to the delay, does not in any way affect the rights of the non-assenting heirs.

In our opinion, no sufficient excuse is shown for the long delay of the administrator and creditors in subjecting this town lot to the payment of the debts of the estate, and the right to do so is now barred, except as to the interest of the administrator therein. The administrator cannot take advantage of his own laches, and, as he is one of the heirs, his interest in the lot is still subject to the debts of the estate.

As to the farm tract: The administrator obtained *When delay excusable.* an order, and offered it for sale, in 1876, but no one offered to purchase on account of an impending law suit involving the title to this land. Afterwards, in 1877, the Theurer heirs brought suit to recover this tract of land, and this litigation was not settled until 1890. The adverse litigants had still three years in which to take an appeal to this court, and the

administrator, under the advice of his attorney, delayed offering the lands for sale until after the expiration of that time. Soon afterwards this proceeding was commenced. Under the evidence, we are of the opinion that the court did not abuse its discretion in holding that the excuse given for the delay was reasonable, and that the right of the creditors to subject this tract of land to their debt is not barred.

As the farm tract of land is still subject to the lien of creditors of the estate for the payment of their debts, it follows that the judgment of the circuit court refusing to order a final settlement was right. But, in so far as the judgment of that court directed that the lot in the city of Fort Smith be sold for the payment of debts of the estate of Joseph Brogan, the same is modified, and the order for the sale of said lot is set aside and vacated, except as to the interest of E. C. Brogan therein. In other respects the judgment of the circuit court is affirmed.

BATTLE and HUGHES, JJ., dissent for the reason that they are of opinion that the probate court had no jurisdiction to determine the question as to title of land presented in this case.